RICHARD L. SYLVAN AND PATRICIA K. SYLVAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sylvan v. Commissioner
Docket No. 8721-76.
United States Tax Court
T.C. Memo 1979-392; 1979 Tax Ct. Memo LEXIS 129; 39 T.C.M. (CCH) 216; T.C.M. (RIA) 79392; September 24, 1979, Filed Richard L. Sylvan, pro se. Thomas P. Dougherty, Jr., for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $615.00 deficiency in petitioners' income tax for 1973. The sole issue is whether certain payments received by Richard L. Sylvan from the City of Baltimore, Maryland, while he was a resident at Baltimore City Hospital qualified as scholarship or fellowship grants excludible from gross income. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time of filing their petition, petitioners Richard L. Sylvan and Patricia K. Sylvan were residents of Simsbury, Connecticut. Patricia is a party only by virtue of having filed a joint return with her husband. When we hereafter refer to petitioner, we will be referring *130 to Richard. Petitioner received his Doctor of Medicine degree from the University of New York (Buffalo) Medical School in May 1972. In July 1972 petitioner commenced a two year residency program at Baltimore City Hospital ("BCH") in Baltimore, Maryland. At the conclusion of his stays at BCH and other institutions, petitioner met the American Medical Association's minimum standards for certification as a specialist in internal medicine. Petitioner's residency program was undertaken in connection with a Postdoctoral Fellowship program at the Johns Hopkins University School of Medicine ("Johns Hopkins"). In applying to become a Postdoctoral Fellow, petitioner signed an agreement stating that he would remain at BCH for the academic year. Petitioner was not a candidate for a degree during the year in issue. BCH is owned by the City of Baltimore. Its principal function is the medical care and treatment of patients. There are 600 to several thousand patients at BCH at any given time. BCH is staffed by 100 full-time physicians.Approximately 30 of these physicians care for patients full-time; the remaining 70 physicians split their time between patient care and clinical research. *131 BCH is affiliated with Johns Hopkins in that all of its full-time staff physicians are members of the faculty of Johns Hopkins. There were approximately 100 residents at BCH during the year in issue; all the residents were Postdoctoral Fellows at Johns Hopkins.They were required to live on BCH's grounds and were on call when assigned to general medical ward service. Their activities were under the supervision and control of the full-time staff physicians at BCH. BCH did not charge its patients for services performed by residents. As a resident, petitioner had between 10 and 12 service assignments including general medical, oncology, renaltology, psychiatry, cardiac care, emergency care and out-patient medicine. Although petitioner was apparently not required to work specific hours except while on emergency duty, BCH did require petitioner to accomplish the daily work outlined for him. His duties included taking medical histories, examining patients, making notes on his patients' charts, prescribing and overseeing treatments, administering and evaluating results of electrocardiograms, administering blood count and urinalysis tests, and preparing patient discharge summaries. *132 The licensed BCH staff physicians oversaw petitioner's performance of his duties as a resident. While assigned to the general medical ward petitioner had at any one time between four and seven patients under his care. He was required to visit these patients three times daily; once by himself and twice accompanied by a full-time staff physician. In addition, medical students, interns and beginning residents occasionally accompanied petitioner on his rounds to gain the benefit of petitioner's experience and knowledge. If petitioner failed to make his rounds, he would not be paid his stipend. When assigned to the emergency ward, petitioner worked shifts of 12 hours on duty and 12 hours off duty. During the on-duty shifts petitioner examined patients in the emergency room, made notes as to the patients' conditions, and prescribed treatment. The head of the emergency room, who was always a full-time staff physician, re-examined the emergency patients and checked petitioner's analyses. In addition, petitioner's notes with respect to the emergency room patients and his patient charts from the general medical ward were directed to the Chief of Medicine of BCH. Petitioner was subsequently *133 questioned on his knowledge of selected cases. As part of his learning process, petitioner also attended lectures. In 1973 Baltimore paid petitioner a stipend of $9,874.90 from which it withheld social security tax and federal and state withholding tax. All similarly experienced residents at BCH were paid the same stipend. The amount of the stipend was not based on financial need or number of dependents. A resident could apply to Johns Hopkins for additional monies if he had a reasonable educational need. The paid sick leave policy for residents at BCH was more liberal than that for regular BCH employees. On his 1973 return, petitioner excluded $3,600 ( $300 per month for 12 months) of the stipend received from Baltimore as a fellowship grant. In his statutory notice, respondent determined that the entire amount excluded by petitioner was taxable income. ULTIMATE FINDINGS OF FACT Petitioner, as a resident, performed substantial and valuable services for BCH; the stipend which he received was compensation for these services. OPINION The sole issue in this case is whether petitioner is entitled to exclude $3,600 received during 1973 from the City of Baltimore while *134 a resident at Baltimore City Hospital ("BCH"). Petitioner contends that the amount excluded was received by him as a fellowship grant. Respondent contends that this amount represented compensation for services performed which is not excludible under section 117. [1] We agree with respondent. Section 117(a)(1) excludes from gross income amounts received as a scholarship at an educational institution or as a fellowship grant. Section 1.117-4(c), Income Tax Regs., specifically provides that payments made as compensation for employment services are not excludible scholarship or fellowship grants. In upholding the validity of these regulations, the Supreme Court stated that the definitions contained therein comport with "the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quidproquo from the recipients." Bingler v. Johnson,394 U.S. 741, 751 (1969). The test to be applied is whether the primary purpose for making the payments *135 to petitioner was to educate and train him in his individual capacity or to compensate him for services rendered. Adams v. Commissioner,71 T.C. 477, 483-484 (1978); Weinberg v. Commissioner,64 T.C. 771, 776 (1975). This case is one in a long line of cases dealing with the applicability of section 117 to payments received by individuals serving periods of residency in hospitals as part of their training in the medical profession. With few exceptions, the payments have been held to be "compensation for past, present, or future employment services," not excludible from gross income under section 117. Section 1.117-4(c)(1), Income Tax Regs. See, e.g.,Parr v. United States,469 F. 2d 1156 (5th Cir. 1972); Brubakken v. Commissioner,67 T.C. 249 (1976); Weinberg v. Commissioner,supra;Dietz v. Commissioner,62 T.C. 578 (1974); Fisher v. Commissioner,56 T.C. 1201 (1971). But see and compare Leathers v. United States,471 F. 2d 856 (8th Cir. 1972), cert. denied 412 U.S. 932 (1973); Bailey v. Commissioner,60 T.C. 447 (1973); *136 Bieberdorf v. Commissioner,60 T.C. 114 (1973). [2]
As a resident, petitioner was required to perform substantial services for BCH. His activities were supervised by BCH's full-time staff physicians. When on duty in the general medical ward petitioner was on call and regularly was assigned from four to seven patients. If petitioner did not check on the condition of these patients three times daily he would not receive his stipend. Petitioner's duties also included working 12-hour shifts in the emergency ward where he examined patients and prescribed treatment. At all times petitioner was required to live on hospital grounds. Petitioner attempts to minimize the value of his services by pointing to the BCH's low patient/staff ratio as an indication that BCH could have cared for as many patients as effectively without the services of residents as it did with their services. We do not find this argument convincing. Petitioner and the other residents performed many valuable services for BCH. Although BCH might have been *137 able to operate without the services of the 100 residents, we think it quite unlikely that BCH could continue to care for as many patients or as effectively as it could with their services. See Leathers v. United States,supra.Petitioner's argument is at most conjectural because BCH did use the residents' services and it compensated for them. See Fisher v. Commissioner,supra at 1215. Petitioner also argues that BCH did not charge patients for his services and that as a consequence BCH suffered a "net loss." We believe that whether BCH charged patients for petitioner's services is irrelevant to the issue in this case. Adams v. Commissioner,supra at 488. Our concern is whether petitioner performed substantial and valuable services for BCH and whether the payments petitioner received were compensation for these services.We have so found. The major function of BCH was patient care, and, as a resident, petitioner made a valuable contribution to the performance of that function for which he was compensated. Fisher v. Commissioner,supra at 1213-1214. Furthermore, the stipend received by petitioner *138 had none of the normal characteristics of a fellowship grant. First, petitioner was paid the same as similarly experienced residents; the amount of his stipend was not based on financial need.See Fisher,supra at 1213; Proskey v. Commissioner,51 T.C. 918, 924 (1969). Second, the City of Baltimore withheld social security tax and federal and state withholding taxes from petitioner's paychecks. See Adams v. Commissioner,supra at 487; Parr v. Commissioner,supra at 1158, footnote 5. Third, the services performed by petitioner exceeded the incidential duties which might normally be characteristic of a fellowship grant. See Bieberdorf v. Commissioner,supra.
While we recognize that the work at BCH provided petitioner with valuable training and experience, this fact alone does not convert a payment which is in the nature of compensation into a fellowship grant. Proskey v. Commissioner,supra at 925. We hold that no part of petitioner's stipend is excludible from gross income under section 117. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. See also Burstein v. United States, Ct. Cl. No. 402-76 (Trial Div., May 2, 1979), 43 AFTR 2d 1132↩, 79-1 USTC par. 9354.